[Civ. No. 288.  Third Appellate District.—March 19, 1907.]

## CHARLES SHIVELY, Respondent, v. EUREKA TEL- LURIUM GOLD MINING CO., Defendant, Appellant. S. W. POWELL, Administrator, etc., Intervener, Ap- pellant.

CORPORATIONS—RIGHTS OF DIRECTORS—ACTION ON QUANTUM MERUIT— FORMER JUDGMENT INVALIDATING NOTES NOT A BAR.—A judgment in a former action against a corporation based upon notes issued to the directors of the corporation by their own votes, which were adjudged invalid and were canceled, in which the indebtedness of the corporation upon the consideration of the notes was not passed upon or adjudicated, is not a bar to a subsequent cause of action on behalf of the directors, based upon an account stated, and upon a *quantum meruit* for services rendered and for money loaned and money expended by them for the use and benefit of the cor- poration.

ID.—TIME OF ACCOUNT STATED—IMPLIED AGREEMENT—SUPPORT OF FINDING.—An account stated by the corporation in favor of one who afterward became its director, for services actually performed and money advanced prior thereto, is valid and binding. No express agreement was required to be shown, but a finding in favor of the account stated is sufficiently based upon an implied agreement.

ID.—INCURRING OF JUST INDEBTEDNESS BY DE FACTO DIRECTORS.—The incurring of just indebtedness against the corporation by *de facto* directors, cannot be impeached by showing an irregularity in their election.

ID.—SERVICES RENDERED AND MONEY ADVANCED BY DIRECTORS—REGU-
LARITY OF ELECTION—SUPPORT OF FINDING.—If there is any differ-
ence in the rule that the directors of a corporation may sue the
corporation in *quantum meruit* for money expended and services
performed by each in good faith for the use and benefit of the
corporation, as applied to *de jure* and *de facto* directors, it is suffi-
cient to declare that a finding that the directors were regularly
elected is supported by sufficient evidence to make it binding upon
this court.

ID.—SUFFICIENCY OF EVIDENCE—ABSENCE OF PREJUDICIAL ERROR.—
*Held,* that the evidence is sufficient to support all of the findings
made in favor of the plaintiff, and the directors, his assignors, and
against the defendant corporation and the intervener, upon the
claim of fraud and conspiracy of the directors; and that there is
no prejudicial error in the rulings of the court.

APPEAL from an order of the Superior Court of Shasta
County denying a new trial.   John F. Ellison, Judge.

The facts are stated in the opinion of the court, and in the
opinion rendered upon a former appeal in 129 Cal. 293.

Edward Sweeney, and Robinson & Robinson, for Corpora-
tion, Appellant.

Campbell, Metson & Campbell, and S. D. Woods, for Inter-
vener, Appellant.

Charles A. Garter, and W. S. Tillotson, for Respondent.

BURNETT, J.—This case has been before the supreme
court on a former appeal.   It is reported in *Shively* v. *Eureka
etc. Co.,* 129 Cal. 293, [61 Pac. 939], to which we refer for
a statement of the issues presented by the pleadings.   The
case was reversed because of the insufficiency of the allega-
tions of the complaint in intervention and of the correspond-
ing finding to show a personal indebtedness of Ludlum and
Swezey on account of the alleged assessment of their stock
in the defendant corporation.   But in response to plaintiff's
prayer that judgment be rendered for him on the findings.
the supreme court declared: ''The findings, however, would
not justify a finding for the plaintiff.   A fraudulent con-
spiracy is alleged in the complaint in intervention, and, in the
absence of findings disposing of these issues, we would not

be justified in rendering judgment for the plaintiff.'' The decision of the supreme court eliminated the question of the indebtedness of Ludlum and Swezey, two of plaintiff's assignors, to the corporation, and also determined the authority of the intervener to appear and defend for the corporation. Subsequently the intervener died, and her administrator, Powell, was substituted. Defendant corporation filed amended pleadings, and at the second trial the defendant and intervener stood on common ground. Plaintiff also withdrew from the consideration of the court the fourth cause of action, involving the sum of $8,973.63 for moneys advanced by Watson D. Swezey for the use and benefit of the corporation.

1. Among the allegations of the complaint in intervention and of the answer of the corporation upon which great emphasis is placed is ''that prior to the commencement of this action on the —— day of ————, 1896, in an action brought in the superior court of said Shasta county by the plaintiff against the defendant upon the same alleged causes of action designated in plaintiff's amended complaint 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13, a judgment was duly given and made upon the merits, fully settling and adjusting all matters and things embraced in said alleged causes of action in favor of said defendant and against said plaintiff.''

In reference to this plea in bar it is respondent's contention that it is not available ''because of a want of identity of parties and of the issues in the two actions and because the matters actually adjudicated in the former action are not presented for adjudication in the present action.'' The court found in favor of respondent, holding that the parties and the issues were different. But it is apparent that if either the parties or the issues were different the finding must stand. The parties were the same except that John J. Atherton, the owner of fifty shares of capital stock, was intervener in the former, and Mrs. B. C. Northrup, the owner of another fifty shares, was intervener in the present action. But appellant contends that they both appeared in the respective actions as intervening stockholders and defended for the corporation; and, therefore, they appeared in the same capacity and for the same purpose, and hence in legal contemplation both actions must be considered as between the same parties.

In *Wickersham* v. *Crittenden,* 110 Cal. 332, [42 Pac. 893], it is said: ''That an action brought by a stockholder to recover money paid to the president of the corporation on account of salary is brought for the account of the corporation, and not for the individual benefit of the stockholder; and whatever would have estopped the corporation from recovering a judgment against its president is equally a defense against the stockholder.'' To the same effect are *Fox* v. *Hale & Norcross Min. Co.,* 108 Cal. 475, [41 Pac. 328] ; *Chetwood* v. *California National Bank,* 113 Cal. 414, [45 Pac. 704].

Although the complaint in intervention does not purport to be for the benefit of the corporation, yet the cases cited seem to go to the extent of holding that the corporation is the real party in interest in each case.    If so, there would necessarily be identity of parties.    But this becomes immaterial in view of the conclusion that is unavoidable upon the vital question as to whether the same matter was adjudicated and the same facts involved in the former action that arise in the action before us.

The effect and scope of a judgment are so clearly set forth in the provisions of the Code of Civil Procedure as scarcely to need judicial explanation.    The difficulty remains, however, of applying the law to the particular facts as they are developed in each case.    Subdivision 2 of section 1908, Code of Civil Procedure, is as follows: ''In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.''

As to how we shall view the judgment in section 1911 we have this rule provided: ''That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto.''

At the former trial, after the evidence was all introduced, as stated in the findings, ''plaintiff moved the court to be allowed to dismiss said action on behalf of plaintiff, without prejudice, which motion was by the court allowed and granted, and neither plaintiff nor defendant introduced any evidence to sustain the allegations of the respective answers to inter-

vener's complaint." Appellant insists that there was no judgment of dismissal, but that question is unimportant, because it was treated by all parties as a dismissal and none of the allegations of the complaint as such was considered or determined by the court.

However, notwithstanding the dismissal of plaintiff's action without objection, the court proceeded—no one contesting its right so to do—to hear and determine certain issues raised by the complaint in intervention and the answers of plaintiff and defendant thereto. The court, however, did not determine all these issues and, as before seen, the only evidence offered was on behalf of the intervener. The court did determine that John J. Atherton was the owner of fifty shares of stock and was interested in the result of the action; that at all the times in the amended complaint mentioned, and long prior thereto, the directors of said corporation were W. D. Swezey, J. Scott Ludlum, Anna M. Ludlum, George C. Jones, and Peter Scherer. That the question and issue of the consideration of the promissory notes in the amended complaint mentioned was withdrawn from the consideration of the court and no evidence introduced under the allegations thereof; that paragraphs 4, 5 and 6 of the complaint in intervention were withdrawn from consideration. Paragraph 4 related to the charge of conspiracy; paragraph 5 to fraudulent acts of Swezey and Ludlum in carrying out the conspiracy, and paragraph 6 charged that the latter had agreed to work and operate the mine at their own cost and expense. The foregoing paragraphs were substantially in the same language as the corresponding allegations in the present complaint in intervention. The court further found "that said Ludlum, Jones and Swezey did by their own votes as directors of said corporation cause the notes mentioned in the amended complaint to be issued to themselves, and did take part in the proceedings authorizing said notes to be issued to them by said Board of Directors, and did each of them vote therefor and as said directors did deal with themselves as individuals in issuing said notes, and each of them, save and except the notes mentioned in Counts 1 and 10 of said amended complaint, which were issued to persons not directors of said corporation." And it was further found that said notes were not assigned in good faith and for a valuable consideration, but for convenience in collection, and as conclusions of law it was declared that said

notes—except the two mentioned—and which, it may be remarked, are the basis for two of the counts in the present action, viz., the note to plaintiff for $75, and to one E. A. Reid for the sum of $35—"are illegal, null and void.  That the same be surrendered and canceled."  How there can be any controversy as to what was adjudicated in that action seems almost incredible in view of the language used.  The only question determined is that the notes, having been issued by the directors to themselves, were without validity and were assigned for convenience of collection and they were directed to be canceled.  And the record shows that the notes were subsequently canceled.  But the notes were simply written evidence of an indebtedness, and the effect of the judgment was to remove from consideration the written testimonial of the obligation of the corporation to the payees.  The vital questions involved herein as to the existence of the indebtedness, whether the services were performed and the money advanced for the use and benefit of the corporation as set out in the complaint, and the defense of fraud and want of consideration as exhibited in the present complaint of intervention, were expressly left undetermined and they were not affected in any way by the judgment aforesaid.  The court found in the present action "that all of the causes of action were founded upon the said promissory notes, while in the present action none of the causes of action is based or founded on any promissory note (except the first and second causes of action stated in the present complaint, which are the subject of subdivisions one and two of the paragraph).  The third cause of action is upon an account stated.  The fifth cause of action is upon *quantum meruit* for services rendered.  The sixth cause of action is upon *quantum meruit* for money loaned and advanced, etc.  The seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action are for moneys loaned, advanced, and expended for the use and benefit of the corporation defendant."  The evidence supports these findings and it must follow that the former judgment is no bar.  Indeed, were it not for the character and ability of counsel who urge it, the contention of appellants to the contrary would scarcely merit the courtesy of serious attention.  The decisions of our supreme court wherein are discussed the scope and effect of judgments and of the aforesaid provisions of the Code of Civil Procedure are quite numerous and are

collated by counsel for the respective parties. Among them, as fairly illustrative of the principle involved, we cite the following: *Oakand* v. *Oakland Water Front Co.,* 118 Cal. 160, [50 Pac. 277], in which Mr. Justice Harrison, with usual perspicuity, states the rule in this manner: "The doctrine of *res adjudicata,* or estoppel by reason of a former judgment, rests upon the principle that a cause of action which has been once determined upon its merits by a competent tribunal, between parties over whom that tribunal had jurisdiction, cannot afterward be litigated by them in another proceeding, either in the same or a different tribunal, and it is immaterial whether such cause of action is of equitable or of legal cognizance, or whether the judgment was given in a common-law court or was rendered by a court of equity. . . . But, if the judgment in either tribunal is rendered for a reason or upon a ground not involving the merits of the controversy, no such effect can result." · (*Pyle* v. *Piercy,* 122 Cal. 383, [55 Pac. 141]; *South San Bernardino Co.* v. *San Bernardino Nat. Bank.* 127 Cal. 245, [59 Pac. 699]; *Beronio* v. *Ventura Co. Lumber Co.,* 129 Cal. 232, [79 Am. St. Rep. 118, 61 Pac. 958]; *Freeman* v. *Barnum,* 131 Cal. 387, [82 Am. St. Rep. 355, 63 Pac. 691]; *Moore* v. *Russell,* 133 Cal. 297, [85 Am. St. Rep. 166, 65 Pac. 624].) It is manifest from the provisions of the code and the foregoing decisions that a judgment is conclusive between the parties and privies only as to the facts actually considered and determined or which are necessarily involved in the judgment, and unless those facts are controlling in a subsequent suit the plea that the action is barred by the former judgment must be rejected.

Appellant seems to rely largely upon *Woolverton* v. *Baker,* 98 Cal. 628, [33 Pac. 731], and *Bingham* v. *Hearney,* 136 Cal. 175, [68 Pac. 597]. In those cases there is some general language used apparently affording support to appellants' contention, but, of course, the facts of each case must be considered to determine what was really decided. The decision in the Woolverton case, *supra,* is put upon the ground that the cause of action was the same in both actions. That the controlling question at issue determined in the former and involved in the subsequent proceeding was the title to the land, and, as stated in the syllabus, it is correctly held that "In an action to compel a reconveyance of land alleged to have been conveyed to one of the defendants upon the sole consideration

and condition that the grantee would apply a sufficient portion of the rents for her support and maintenance during life, on account of the alleged breach of such condition, a judgment in a former action between the same parties, which sets up the same conveyance and alleged that it-had been made upon the sole consideration that the grantee should hold the same in trust for her, and that the rents, issues and profits should be applied in providing for her support and maintenance during life and that they had not been so applied, and sought a judgment that she was the owner of the premises as against the defendants, and that the premises be reconveyed to her, in which action the court adjudged that the defendants as against the plaintiff were the owners of the land in fee simple, free and clear of any and all trusts, exceptions, limitations and conditions set forth and alleged in said complaint constitutes a complete defense and bar to the new action by way of estoppel.'' It would deprive a judgment of almost all significance to hold to the contrary.

The difference between the Bingham case, *supra,* and the one at bar is apparent from the following statement of the court: ''The former action was between the same parties. It involved the same subject matter—the contract concerning the sale of land. The court in the former action had declared the contract valid, and that the defendant had the right to· have it foreclosed and to be restored to the possession of the land. The present action is brought for the purpose of having the same contract rescinded and to recover the payments made thereunder.'' It is true that into the second action the specific allegation of fraud for the first time was injected by the plaintiff, who was defendant in the first action, but this could not change the rule that the validity of the contract having been determined it could not again be brought to judg-ment by the same parties. We are satisfied that the claim of appellants in relation to the former judgment cannot be maintained.

2. Appellants attack the finding of the court upholding the allegations in the fourth count of the complaint in reference to the stated account of George C. Jones. There was evidence, however, to show that the account had been stated and agreed to by the parties, but the court found that subsequently to the statement of the account a payment was made which was not credited, ''but that the said account stated was for

services actually performed and for money actually advanced to the said defendant corporation, by the said George C. Jones; and when said sums were so advanced and said services so performed, and when said account was stated, neither the said George C. Jones or any of the persons alleged and complained of by the defendant and intervener, as confederates of the said George C. Jones, was a director of the said defendant corporation.'' Without setting out the evidence, it is sufficient to say that an examination of the record discloses support for this finding. No express agreement was required to be shown. It might be implied. (*Hendy* v. *Murch*, 75 Cal. 566, [17 Pac. 702]; *Mayberry* v. *Cook*, 121 Cal. 588, 54 Pac. 95].)

3. Appellants also insist that the court erred in finding that Ludlum, Swezey, Anna Ludlum and Jones were elected directors for the reason that they were not elected at a regular meeting and no notice was given of said meeting. It is admitted that they were *de facto* officers. And assuming for the sake of argument that they were irregularly elected, it cannot avail appellants, because the act of incurring a just indebtedness by persons who are *de facto* directors cannot be impeached by showing an irregularity in their election. (*Barrell* v. *Lakeview Land Co.*, 122 Cal. 129, [54 Pac. 594].) In the Barrell case also it is held that ''A corporation will not be permitted, after allowing a person to act as its secretary and causing him to authenticate its records, to object to the regularity of his appointment, or to repudiate an obligation signed by him as secretary under authority from its board of directors.''

It is claimed that the rule does not apply to money advanced by the directors. In the language of appellants: ''*De facto* officers can bind the corporation so far as third persons are concerned, but they cannot recover upon any claim on their part.'' It seems, however, from the decisions that the directors may bring and maintain actions in the form of *quantum meruit* against the corporation for money expended and services performed in good faith for the use and benefit of the corporation, although they may not execute or join in the execution of a promissory note to themselves which will bind the corporation. (*Seeley* v. *San Jose I. M. & L. Co.*, 59 Cal. 22; *Santa Cruz R. R. Co.* v. *Spreckels*, 65 Cal. 193, [3 Pac. 661, 802]; *Graves* v. *Mining Co.*, 81 Cal. 303, [22 Pac.

665] ; *Pauly* v. *Pauly,* 107 Cal. 8, [48 Am. St. Rep. 98, 40 Pac.
29].)   The rule is stated clearly in the syllabus of *Schnittger*
v. *Old Home Cons. Min. Co.,* 144 Cal. 603, [78 Pac. 9], as
follows: "A director of a corporation, though bound to the
utmost good faith, and forbidden to take part in any transac-
tion concerning his trust in which he has an adverse interest, is
not precluded from dealing directly with the corporation, and
may become its creditor, and take from it a mortgage or other
security, and may enforce it like any other creditor, subject
always to severe scrutiny.   A violation of his duty as a trustee
may render the transaction voidable, but it is not *ipso facto*
void.   The mere fact that the creditor was a director of the
corporation does not render the transaction fraudulent."   If
there should be any difference in this respect between *de facto*
and *de jure* directors, it is sufficient to declare that there was
some evidence to show the regularity of the election in ques-
tion, and hence the trial court's determination that they were
directors of the corporation is binding upon us.

4. The finding that "the escrow agreement between Watson
D. Swezey and J. Scott Ludlum and the stockholders of the
defendant did not provide that the said Ludlum and Swezey
should at their own cost and expense operate the mine of
defendant" is also vigorously assailed.   It was contended at
the trial that the agreement provided that they should do this
work at their own expense.   But while Mr. Ludlum was on
the stand he identified as the original agreement a document
which contained no such provision.   A similar provision was,
however, afterward attached and signed by Swezey, but ac-
cording to his testimony it was not to be binding unless ratified
and signed by Ludlum, which Swezey's deposition shows was
never done.   There is at least evidence to support this as well
as all other findings of the court.

5. The claim of fraud and conspiracy was passed upon by
the court and deliberately found against defendant and inter-
vener.   The same learned judge presided at the three trials to
which reference has been made, and he had rather exceptional
opportunities to weigh the evidence and determine the cred-
ibility of the witnesses.   It is true, as suggested by appellants,
that it is usually difficult to establish fraud clearly, and
that positive and express proof is not required; but it must be
remembered, also, that charges of this character are easily
made, and they often have no foundation in fact.   Surmise is

not evidence and something more than suspicion is required as the basis for judicial action. We have considered the circumstances declared by appellants to be badges of fraud, and we are satisfied that they do not present sufficient reason for disturbing the findings of the court against appellants.

6. During the progress of the trial exceptions were taken by appellants to certain rulings of the court. Most of them present the same questions hereinbefore considered, and they do not require further notice. I think there is merit in some of the objections, however, but the rulings would not justify a reversal of the judgment. For instance, this question was asked Mr. Ludlum: "During the time you acted and performed services for the company as you have testified, what was the reasonable value of those services?

"Mr. Woods: We object to that upon the ground that it is not shown that he knows."

He ought to have been interrogated more fully as to his knowledge of the value of such services, but it is doubtful whether the objection raises the question of his competency to testify. Besides, it is a matter addressed largely to the discretion of the trial court, and we cannot say there is no justification for the inference that he had shown himself qualified.

Again, the same witness said: "I requested the board of directors on Jan. 1, 1895, that they have *stated accounts* made of the indebtedness that was against the company at that time *of which this was one.*

"Mr. Robinson: We move to strike this out, your Honor, on the ground that an account stated is a conclusion of law.

"The Court: I will deny the motion."

In my opinion, the motion should have been granted; but the ruling did no harm, as the conclusion must necessarily follow from the facts stated.

We find no prejudicial error, and the order denying the motion for a new trial is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 15, 1907.